UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES V. KELLY; CRESCENT BAR CONDOMINIUM MASTER ASSOC., et al., Plaintiffs, vs. PUBLIC UTILITY DISTRICT NO. 2., et al., Defendants. | NO. CV-11-023-JLQ **AMENDED[1] ORDER GRANTING PORT OF QUINCY'S MOTION TO JOIN AND DENYING DEFENDANTS' MOTION TO DISMISS** |

BEFORE THE COURT are Defendant Grant County PUD's Motion to Dismiss (ECF No. 37) for lack of subject matter jurisdiction and Defendant Port of Quincy's Motion to Join (ECF No. 54).

Under § 313(b) of the Federal Power Act, 16 U.S.C. § 791a et seq., judicial review of Federal Energy Regulatory Commission ("FERC") orders, including licensing and surrender decisions, may only be had in the U.S. Court of Appeals for any circuit in which the licensee is located or in the U.S. Court of Appeals for the District of Columbia. 16 U.S.C. § 825l(b). The sole issue before the court is whether or not the claims asserted by Plaintiffs in this case constitute a collateral attack on the PUD's FERC license and therefore must be heard in the Court of Appeals.

I.      **BACKGROUND**

The parties do not dispute the facts surrounding the issue of jurisdiction.

---

[1]  Page 13 of the court's July 8, 2011 Order contained a typo referencing ECF No. 61, which is a pending Motion to Dismiss filed by the Crescent Bar Recreational Home Owners Association.  As this Order does not pertain to that motion, this amendment corrects the reference to ECF No. 37, which is the PUD's Motion to Dismiss.

ORDER - 1

*A. Federal Power Act*

In 1920, Congress created the Federal Power Commission (FPC) through the Federal Power Act ("FPA"), codified at 16 U.S.C. § 791a et seq.  The FPC had the authority to issue licenses to operate and maintain transmission lines and other related power facilities. 16 U.S.C. § 797(e). In 1958 Congress amended the FPA, to include subsection (a) of section 825l provides that "any person ... aggrieved by an order issued by the Commission" may apply for a rehearing before the Commission. 16 U.S.C. § 825l(a). It also provides that only an entity that applied for a rehearing may bring an action to review an order of the Commission. Subsection (b) states:

> Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the United States Court of Appeals for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing

2 16 U.S.C. § 825l(b).

The other judicial review provision in the FPA states:

> The District Courts of the United States ... shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder.

16 U.S.C. § 825p. As of 1958, therefore, section 825l provided for Court of Appeals review of orders issued by the "Commission" under the FPA and section 825p provided for exclusive District Court review for claims of violations of the FPA and violations of orders issued pursuant to the FPA. 16 U.S.C. §§ 825l(b), 825p.

Congress dissolved the FPC and created the Department of Energy ("DOE") and the Federal Energy Regulatory Commission ("FERC") in 1977. Section 825l of the FPA was applied to FERC. *Escondido Mut. Water Co. v. La Jolla, Rincon, San Pasqual, Pauma, and Pala Bands of Mission Indians*, 466 U.S. 765, 777 n. 19 (1984).

**B. Crescent Bar Island**

In 1955, FERC issued a 50-year license to the Public Utility District No. 2 of Grant

County to operate the Priest Rapids Hydroelectric Project on the Columbia River. Crescent Bar Island ("CBI") is an island located in the Columbia River within the project boundaries. In 1962, the PUD entered into a lease of CBI to the Port of Quincy for "public and recreational purposes" which lease was scheduled to terminate in fifty-years in 2012 ("PUD-Port lease"). The 1962 PUD-Port lease includes a provision incorporating by reference the terms and conditions of the 1955 FERC license. In 1970, the Port subleased a portion of the island to a developer, the predecessor of Crescent Bar, Inc. ("Port-Crescent lease"), which sold leasehold interests to members of the public for the development of recreational homes and condominiums on the island.

The Complaint alleges that in 1973 the Port-Crescent lease was modified to expressly extend the term of Crescent's leasehold from 2012 to February 28, 2023 (because of the "financing requirements of the contemplated improvements"). Thereafter, the PUD and Port are claimed to have entered into an amendment extending the term of the 1962 PUD-Port lease to 2023, subject to FERC approval. That agreement stated the parties would "promptly...submit" their proposed extended sublease for approval of FERC. ECF No. 46, Ex. B. The Complaint further alleges that in 1975, the Port, with approval of the PUD, entered into an agreement which identified a dispute between the parties regarding the term of the Crescent lease. In 1979, the PUD, the Port and Crescent are alleged to have entered into a new lease (replacing all prior agreements), which included a term providing that the PUD, Port, and Crescent "reaffirm their desire to extend the term of the June 5, 1962 and this Lease Agreement until February 28, 2023," subject to FERC approval. ECF No. 40, Ex. B at 31. The 1979 lease also stated that "Application to the [FERC] for approval....shall be required..." *Id*. at 34. The Port also agreed that upon request, it would exercise "reasonable diligence" to get an extension of its lease with the PUD in order to give Crescent a fifty(50)-year extension of its lease term. ECF No. 40, Ex. B, at 48-49.

Paragraph 3.20 of the Complaint, at page 13, lists eight instances over the next two decades in which the PUD expressed its commitment to the lease extension and/or to seek

FERC approval.  Though there is no allegation FERC ever formally approved any lease terms, CBI private residential units were constructed and interests sold.   Plaintiffs are condominium leasehold owners (and associations acting on behalf of owners) who have made substantial investments in CBI.  In 1999, FERC determined in an Order that "after 1965, all leases of projects lands needed Commission approval" and that subsequent subleases purporting to extend the term to 2023 "have not received commission approval."  ECF No. 40, Ex. E.  In a footnote of that decision, the Commission noted that the PUD "has long been aware of the need for Commission approval of its lease agreements..." In 1973, the Commission apparently declined to approve the lease terms beyond the term of the existing license.  Though the Commission changed its policy in 1980 to allow approval of leases extending beyond the license term, the PUD did not subsequently seek Commission approval.  *Id.*

In 2005, the PUD's FERC license was to expire.  In 2003, the PUD applied for a new license.  In 2008, FERC granted the PUD a new forty-four (44)- year license.  The 2008 License requires the PUD to develop and submit a final Shoreline Management Plan ("SMP").  In April 2010, the PUD submitted to FERC a SMP which would *eliminate* residential use of CBI after 2012.  Plaintiffs have intervened in the FERC proceeding to challenge the proposed SMP.  The FERC proceeding regarding the SMP is still ongoing.  FERC has not decided whether to approve or reject the SMP.  Plaintiffs contend in the FERC proceeding that the proposed SMP is inconsistent with the License, violates NEPA, and would have the effect of evicting and displacing existing residents.

Meanwhile, the PUD has ordered Plaintiffs to vacate the premises on or before June 1, 2012.  The Plaintiffs believe they have either a right to maintain and occupy their residences at least until 2023 and/or a right to just compensation for being removed earlier than anticipated.  Plaintiffs take the position that the PUD had a legal obligation to seek FERC's approval of the lease extension, but that it has failed to do so.

Plaintiffs filed this lawsuit on January 19, 2011 asking this court to adjudicate the rights it claims pursuant to written and oral agreements with the Defendants, specifically

the right "to maintain and occupy their residences on Crescent Bar Island."  ECF 45 at 2.
The Complaint seeks damages, specific performance, and injunctive relief against the
Defendants based on theories of breach of contract, promissory estoppel, and violations
of due process under 42 U.S.C. § 1983.  Plaintiffs prayer for relief requests the following
relief:

      1.     For specific performance of the 2023 lease termination date.

      2.     For specific performance of the PUD's promise to negotiate a new lease with
            Plaintiffs, a term of which shall be coincident with the term of the 2008
            License;

    2 [sic]. For injunctive relief prohibiting any Defendant from evicting
            Plaintiffs from the Property;

      3.     In the alternative, for damages in such amount as the court deems just and
            equitable;

      4.     For reasonable attorney fees and costs;

      5.     For such other and further relief as the Court deems just and equitable.

ECF No. 1 at 28.

On April 1, 2011,  the PUD filed a Motion to Dismiss for lack of jurisdiction.  The
Port has filed a separate motion to join in the Motion to Dismiss.  Plaintiffs jointly
opposed and Defendants replied.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes a motion to dismiss for lack of
subject matter jurisdiction over an entire action or over specific claims. "Federal courts
are not courts of general jurisdiction; they have only the power that is authorized by
Article III of the Constitution and the statutes enacted by Congress pursuant thereto."
*Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Limits upon federal
jurisdiction must not be disregarded or evaded. *Owen Equip. & Erection Co. v. Kroger*,
437 U.S. 365, 374 (1978). A plaintiff has the burden to establish that subject matter
jurisdiction is proper. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). "A

1   Rule 12(b)(1) jurisdictional attack may be either facial or factual." *Safe Air v. Meyer*, 373

2   F.3d 1035, 1039 (9th Cir.2004)  (*citing White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.

3   2000)). "In a facial attack, the challenger asserts that the allegations contained in a

4   complaint are insufficient on their face to invoke federal jurisdiction." *Id.* By contrast, a

5   factual attack "disputes the truth of the allegations that, by themselves, would otherwise

6   invoke federal jurisdiction." *Id.*  Three different standards apply in the evaluation of a

7   Rule 12(b)(1) motion, depending upon how the motion is made and what it addresses.

8        The Defendants' motion is a facial attack, therefore the factual allegations of the

9   complaint are presumed to be true and conflicts in the pleadings are resolved in the

10   plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (internal citations

11   omitted); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir.2002). The

12   court need merely to look at the complaint to determine whether the plaintiff has

13   sufficiently alleged a basis of subject matter jurisdiction. To survive such a motion, the

14   plaintiff need only make a prima facie showing of jurisdiction. *Rio Props., Inc*., 284 F.3d

15   at 1019.

16   **III.   DISCUSSION**

17        The sole question before the court is whether Section 313(b), 16 U.S.C. § 825l, of

18   the Federal Power Act which provides for exclusive court of appeals jurisdiction, applies.

19   Plaintiffs argue their claims are not subject to the provision because their claims are

20   based upon separate and distinct contracts not an attack on the license or any decision of

21   FERC, nor would the relief sought deprive the PUD of its ability to fulfill its obligations

22   under its FERC license.

23        **A. Law Applying the Exclusive Jurisdiction Clause**

24        The *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320 (1958) is the seminal

25   U.S. Supreme Court case concerning the scope of scope of the exclusive jurisdiction

26   provision of the Federal Power Act.   In that case the Supreme Court reversed the

27   Washington Supreme Court which had affirmed an order enjoining the City from

28   proceeding to construct a power project for which it had been issued a license by FERC

1  to build.  In finding that the exclusive jurisdiction provision applied to the state court

2  dispute, the Court held,

> provision necessarily preclude[s] de novo litigation between the *parties of*
> *all issues inhering in the controversy*, and all other modes of judicial review. Upon
> judicial review of the Commission's order, all objections to the order, to the license
> [the order] directs to be issued, and to the legal competence of the licensee to
> execute [the order's] terms, must be made in the court of appeals or not at all.

6  *Id*. at 336.  The Supreme Court added that the test for determining whether Section

7  313(b) precludes a district court from hearing a particular claim is not whether the claim

8  was presented to and decided by a Court of Appeals, but rather whether the claim "could

9  and should have been" presented to and decided by a Court of Appeals. *Id.* at 339.  The

10  Supreme Court added that the test for determining whether Section 313(b) precludes a

11  District Court from hearing a particular claim is not whether the claim was presented to

12  and decided by a Court of Appeals, but rather whether the claim "could and should have

13  been" presented to and decided by a Court of Appeals. *Id*. at 339.

14       The Ninth Circuit Court of Appeals has specifically addressed the applicability of

15  the Federal Power Act's exclusive jurisdiction clause in several cases, holding for

16  instance that a plaintiff may not escape this exclusive review process through artful

17  pleading. In *California Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908 (9th Cir.

18  1989), for example, FERC issued a license to construct a hydroelectric power facility in

19  the Sierra National Forest.  After failing to get relief in the administrative process,

20  plaintiffs filed suit seeking injunctive and declaratory relief in federal District Court

21  against the U.S. Forest Service under the National Environmental Policy Act and the

22  American Indian Religious Freedom Act.  The Plaintiffs contended "that they [were] not

23  attacking the licensing decision made by FERC but instead [were] seeking review only of

24  the ... failure to follow the procedural and substantive steps outlined in statutes outside

25  the purview of power and energy regulation." *Cal. Save Our Streams Council*, 887 F.2d

26  at 911.  The Ninth Circuit rejected the contention finding that the suit was "an attempt to

27  restrain the licensing procedures authorized by FERC" with "the practical effect" being

28  "an assault on an important part of the FERC license."  *Id*. at 912.  Finally, the court held

that the suit would result "in substantial disruption of the statutorily mandated licensing procedure." *Id*.

In *Skokomish Indian Tribe. v. U.S.*, 410 F.3d 506 (9th Cir. 2005), the Tribe sued the City of Tacoma for damages based upon the City's operation of a "sina qua non" of a hydroelectric project namely, the flooding of 8.8 acres of federal (reservation) land.  The Tribe sued the City under its Treaty, 42 U.S.C. § 1983, the Constitution, and federal common law.  Though the Tribe did not seek to modify, rescind or set aside FERC's licensing order, the Ninth Circuit held that the District Court did not have jurisdiction because the claims "flow[ed] directly from FERC's licensing order" due to the fact that 1) the City was acting in accordance with its license and 2) FERC had specifically issued a required finding for the license that the project would not interfere with the reservation's purpose.

In *United States v. Pend Oreille Public Utility District No. 1*, 28 F.3d 1544 (9th Cir. 1994), the Ninth Circuit found that the District Court did have jurisdiction to hear the Indian Tribe's claim for trespass and damages because the harm complained of (also flooding) was not authorized by the license and unlike in *Skokomish Indian Tribe*, there was no finding that the license would not interfere with the reservation's purpose.

## B.     Analysis

The PUD and Port Defendants seek the dismissal of <u>all</u> of Plaintiffs claims, claiming the "***suit*** implicates and flows from FERC's licensing order."  Despite this general contention regarding the entirety of Plaintiffs' action, the PUD's briefing focuses on the fact that "Plaintiffs seek the same outcome –longer occupation of Crescent Bar Island – in two different forums."  ECF No. 58 at 9.  This requested relief concerns that portion of Plaintiffs' Complaint requesting *specific performance* (and injunctive relief).  However, the Complaint seeks damages as well.

*1. Plaintiffs' Prayer for Specific Performance and Injunctive Relief*

The first three requests in the Complaint's prayer for relief directly implicate the future use of CBI. It requests: "specific performance of the 2023 lease termination date" and "specific performance of the PUD's promise to negotiate a new lease with Plaintiffs, a term of which shall be coincident with the term of the 2008 License". The court agrees with the PUD that these claims are intertwined with the FERC license and license proceedings because these claims request the court to order relief which would effect how CBI is utilized going forward, a matter currently before FERC.

Plaintiffs assert the narrow argument that if, as the PUD has suggested, the 2008 License did not decide the issue of whether continued residential use of CBI would or would not be approved, then Plaintiffs claims for the continued occupation of CBI can not be considered a collateral attack on the license. Plaintiffs also contend that this suit would not interfere with any FERC decision on the future use of CBI. They claim that even if the court granted the requested relief and FERC failed to approve the residential use of the property to at least 2023, the PUD would retain the ability to satisfy its obligation to comply with FERC's decision by acquiring the Plaintiffs leasehold interests either by agreement or by the exercise of eminent domain with just compensation. ECF No. 45 at 16, 19.

The FPA vests in FERC the authority to issue licenses and impose conditions on licensees. The FERC license, licencing procedure, and prior orders give FERC the first authority to decide the permissible uses of the Project's property, and to decide whether to approve subleases involving Project property. It is undisputed that the PUD's conduct is controlled by FERC's license, and the FERC license is necessarily a term that can alter the contours of the Plaintiffs' leasehold interests on CBI. The Shoreline Management Plan is one part of that license. If as part of the licensing process, FERC does not approve the continued occupancy of CBI as part of the SMP, Plaintiffs admit a challenge to that decision could not brought in this forum. ECF No. 45 at 16. Accordingly, the court's ability to grant specific performance or injunctive relief concerning Plaintiffs' continued occupancy of CBI, hinges upon FERC's approval or disapproval of that type of

continued use of the property.   It is FERC's, not this court's, role to decide whether to permit such continued residential occupation of CBI.  This court has no authority to order what FERC alone is empowered to dictate.  As in *Save Our Streams*, any attempt by this court *at this time* (given the lack of any decision by FERC) to mandate the future use of the Project property would constitute "an attempt to restrain the licensing procedures authorized by FERC", would be "an assault on an important part of the FERC license" and could result "in substantial disruption of the statutorily mandated licensing procedure." Plaintiffs have adequate remedies available to them through FERC procedures and, if necessary, appeals, to obtain a determination whether, or to what extent, private use of CBI will be allowed in the future.

2. **Damages claims and claim for specific performance of the PUD alleged obligation to seek approval of lease extension**

In addition to specific performance and injunctive relief regarding Plaintiffs' ability to occupy CBI through at least 2023, Plaintiffs Complaint also seeks damages for breach of contract and violations of the Fifth and Fourteenth Amendments of the United States Constitution.  Plaintiffs argue  "[r]egardless of what action FERC may take concerning the nature and extent of future uses of CBI, Homeowners are entitled to seek constitutional and state law remedies for the PUD's *failure to keep its commitments*" - including the PUD's obligation to seek FERC 's approval of the extension of the leases. ECF 45 at 2-3, 15 (emphasis added). Plaintiffs also claim they are entitled to specific performance of the PUD's obligation to seek FERC approval of their leases.

As Plaintiffs point out, the PUD has expressly acknowledged that the Plaintiff's monetary and specific performance claims, other than the request for specific performance of the 2023 lease termination date in order to grant them the right to occupy CBI, are not matters for determination by FERC.  In its Answer filed with FERC to the Plaintiffs intervention in the SMP proceedings, the PUD stated therein:

> While Grant PUD's compliance with any 'due process' requirements under state law in association with its final SMP and its decision to cease residential use of CBI upon expiration of the lease with the Port of Quincy is not a matter for Commission inquiry, Grant PUD believes it has complied with all state requirements in this regard.  Similarly, the various parties' rights and obligations

ORDER - 10

under the various leases, sub-leases, and amendments thereto with respect to CBI are matters to be resolved in state forums and not by the Commission...

ECF No. 43, Ex. B at 309 n. 8.

The PUD presents in its Reply a table of like contentions made by Plaintiffs both in the underlying Complaint herein as well as in the FERC proceedings.  ECF No. 58 at 5-6.

However, the overlap of evidence, as opposed to issues, is insufficient to preclude this court from hearing a given claim.  The PUD also contends in its Reply that Plaintiffs' position "overlooks Commission decisions such as *East Bay Mun. Util Dist.*, 64 FERC P61043 (1993) and 66 FERC P61199 (1994).  Like the instant case, the *East Bay* case also involved FERC's regulation of the appropriate use of project land which involved long-term tenancies.  The Commission adjudicated the tenants' protests to the licensee's proposed recreation plan, which excluded all long-term tenants, as well as the licensee's action in beginning to evict residents from the project area.  The Commission directed the licensee to eliminate the long term tenancies, but to allow them an additional two years before requiring relocation.   Though that case shows the types of issues within FERC's purview, the same decision also states under the section titled "Tenants' Rights": "As to disputes between tenants, property owners, and a licensee concerning appropriate compensation for actions taken by a licensee under its license, these are matters for resolution in the appropriate state forum."

Notably, Plaintiffs have not presented FERC with the issue of whether the PUD has a legal obligation to seek approval of the lease extension.   Plaintiffs have advised FERC in the FERC proceedings that it has retained counsel to review this contention and that it "reserves its rights with respect to such matters."   ECF No. 40 at 147.

Plaintiffs' suit for damages based on breach of contract and for constitutional violations, in part based upon the PUD's alleged failure to seek FERC approval of the leases, are matters this court can and should hear and are issues that FERC has no specific ability or authority to resolve.  FERC can not award retrospective damages for breach of contract.  Plaintiffs breach of contract and constitutional claims do not seek to modify, alter or rescind the FERC license, nor are they part of the FERC licensing proceedings,

1   except to the extent of seeking FERC's approval of the extension of the leases, a matter
2   outside the jurisdiction of this court.

3

4

5       **3. Conclusion**

6       Section 825l of the Federal Power Act does not preclude this court from deciding
7   Plaintiffs' state law breach of contract claims and constitutional claims seeking damages.
8   Accordingly, the court **DENIES** Defendants' request that the court dismiss *the action*.
9   However, Plaintiffs' request for specific performance of their lease asking this court to
10  declare their right to occupy CBI until at least 2023 is, at present time, in conflict with
11  FERC's authority and intertwined with FERC's ongoing proceedings.  Whereas FERC's
12  licensing proceedings could dictate the type and term of permissible residential use of
13  CBI, at a minimum, Plaintiffs' claim for specific performance of their lease must be
14  stayed pending a final decision by FERC.  This ruling, however, would not preclude the
15  Plaintiff's from seeking injunctive relief against the Defendants, if such were not contrary
16  to the decisions of FERC.

17      The doctrine of primary jurisdiction requires courts to let administrative agencies
18  such as FERC "have the first word," and it applies where the agency has "special
19  competence" over the issue to be decided. *United States v. W. Pac. R.R.*, 352 U.S. 59, 64
20  (1956) (where "enforcement of the claim requires the resolution of issues which, under a
21  regulatory scheme, have been placed within the special competence of an administrative
22  body ... the judicial process is suspended pending referral of such issues to the
23  administrative body"); *accord Clark v. Time Warner Cable*, 523 F.3d 1110, 1115-16 (9th
24  Cir. 2008) (affirming referral of claims regarding telephone service to FCC).  A court
25  should ordinarily "delay forging ahead when there is a likelihood that agency action may
26  render a complex fact pattern simple or a lengthy judicial proceeding short." *Golden Hill*
27  *Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51 (2nd Cir. 1994).

28      Accordingly, since the parties did not address this issue in their briefing, the parties

ORDER - 12

are to file at **12:00 P.S.T. on Friday, June 17, 2011**, position statements as to whether this action should be stayed until FERC's licensing proceedings conclude.  Each position statement shall also address the appropriate means for maintaining the status quo until the parties rights and obligations, including Plaintiffs' right to occupy CBI, have been resolved by FERC and/or this court.

**IV.    CONCLUSION**

    **IT IS HEREBY ORDERED:**

    1. Defendant Port of Quincy's Motion to Join (ECF No. 54) is **GRANTED**. Defendants' Motion to Dismiss (ECF No. 37) is **DENIED.**

    2.  The parties shall file their position papers on Friday, June 17. 2011 at noon  P. D.T. as to the stay of this action pending completion of FERC proceedings.

    **IT IS SO ORDERED**.  The Clerk is hereby directed to enter this Order and furnish copies to counsel.

    **DATED** this 9th day of June, 2011.

                            s/ Justin L. Quackenbush
                        JUSTIN L. QUACKENBUSH
            SENIOR UNITED STATES DISTRICT JUDGE